CLERK US DISTRICT COURT
NORTHERN DIST. OF TX
FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

2016 JUL 28   AM II: 03

DEPUTY CLERK

KRISTOPHER CHAD AUBREY,    )
)
Plaintiff,    )
)
v.    )    CIVIL ACTION NO.
)    1:15-CV-232-BL
RICHARD WEIHERT, *et al.,*    )
)
Defendants.    )    Assigned to U.S. Magistrate Judge

## FINDINGS, CONCLUSIONS AND RECOMMENDATION

This case was reassigned to the United States Magistrate Judge under Second Amended Special Order No. 3-301. Although Plaintiff has consented to the disposition of this case by a magistrate judge under 28 U.S.C. § 636(c), the Defendants did not consent, and therefore the undersigned magistrate judge enters this findings, conclusions, and recommendation under the authority of 28 U.S.C. 636(b). Based on the relevant filings and applicable law, the motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) of Defendant Richard Weihert, and the motion for summary judgment of remaining Defendants Sherry Terry and Sandra Castillo, should each be **GRANTED.** After entry of this findings, conclusions and recommendation, the case should be reassigned to Senior United States District Judge Sam R. Cummings.

## I. PROCEDURAL HISTORY

Plaintiff Kristopher Chad Aubrey, proceeding *pro se*, originally filed this suit in the Dallas Division of this the Northern District of Texas. Because Aubrey named a substantial number of defendants at the TDCJ-Huntsville Unit, and because a substantial part of the events giving rise to his claims related to the medical treatment Plaintiff received at the Huntsville Unit, the case was transferred to the United States District Court for the Southern District of Texas, Houston Division.

*See Aubrey v. Rose Weihert, et al.,* No.3:15-CV-2734-N-BN (N.D. Tex. Order of August 21, 2015, docket no. 8.)   Once three of the defendants (Richard Weihert, Sandra Castillo, and Sherry Terry) appeared in the case pending before the Southern District, they sought to have their claims transferred back to the Northern District of Texas. By Order entered December 17, 2015, that Court transferred Plaintiff's claims against those three Defendants (labeled the "Ware Unit defendants") back to this the Northern District of Texas, Abilene Division. *See Aubrey v. Weihert, et al.,* No.4:15-CV-2448 (S.D. Tex. Order of December 17, 2015).   Thus, pending before this Court are only the claims of Plaintiff Aubrey against Defendants Richard Weihert, Sandra Castillo, and Sherry Terry.

## II. MOTION UNDER RULE 12(C)

Defendant Richard Weihert has filed a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c).   Although Plaintiff sought an extension of time to respond to that motion, which the Court granted, Plaintiff has not filed a response to the Rule 12(c) motion.

### A. Plaintiff's Claim against Richard Weithert

Plaintiff Kristopher Aubrey was an inmate previously confined in the custody of the Texas Department of Criminal Justice (TDCJ) at the time of the events made the basis of this suit. He has provided the Court a street address showing he is now released. (Doc. 92.) The live pleading before this Court is Plaintiff's amended complaint, filed on September 14, 2015. (Doc. 26.)[1] That amended complaint includes claims pursuant to 42 U.S.C. § 1983 against several medical personnel, including Defendant Richard Weihert, alleging they were deliberately indifferent by denying him adequate medical care for an injury to his leg sustained when he was arrested in February 2014, along with

---

[1]*See generally Clark v. Tarrant County,* 798 F.2d 736, 740 (5th Cir. 1986) (an amended complaint entirely supersedes and takes the place of an original pleading, rendering the original complaint of no legal effect); *Boelens v. Redman Homes, Inc.,* 759 F.2d 504, 508 (5th Cir. 1985) (same).

state law claims. (Doc. 26, at 4.) Defendant Weihert is a medical provider employed by Texas Tech University Health Sciences Center (TTUHSC) who worked at the Dick Ware Unit. (Doc. 26, at 2.)

Plaintiff Aubrey alleges that on May 6, 2015, Defendant Weihert ordered x-rays of Aubrey's left knee, referring the x-rays to a doctor at Mitchell County Hospital. (Doc. 26 at 4.) On May 11, 2014, Aubrey claims Defendant Weihert relayed the doctor's findings and allegedly told him, "I guess you already know you fractured your tibia." (Doc. 26 at 4.) Aubrey then contends that Weihert provided Aubrey with a 90-day bottom bunk restriction and said to "return to activities as normal" even after Aubrey explained that he had severe chronic pain in his thighs, shins, and ankles. (Doc. 26 at 4.) Aubrey claims that Defendant Weihert was deliberately indifferent by not evaluating his leg further after he found out it was broken and after Aubrey made complaints about chronic pain. (Doc. 26 at 8.) Aubrey seeks a declaratory judgment, injunctive relief including an examination by an orthopedic doctor, an exemption from performing "forced labor," and treatment of his broken tibia. (Doc. 26, at 10-11.) He also seeks compensatory and punitive damages. (Doc. 26, at 11.)

## B. Rule 12(c) Standard of Review

Rule 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "The standard for dismissal under Rule 12(c) is the same as that for dismissal for failure to state a claim under Rule 12(b)(6)." *Chauvin v. State Farm Fire & Cas. Co.*, 495 F.3d 232, 237 (5th Cir. 2007). The Rule 12(b)(6) standard tests the sufficiency of the complaint against the legal standard set forth in Rule 8, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A party is entitled to dismissal under Fed. R. Civ. P. 12(b)(6) when an opposing party fails to state a claim upon which relief may be granted. "To survive a motion to

dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief

that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic*

*Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also City of Clinton v. Pilgrim's Pride Corp.*, 632

F.3d 148, 152-53 (5th Cir. 2010).

"[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court

to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556

U.S. at 678 (citing *Twombly*, 550 U.S. at 556). While the complaint need not contain "detailed

factual allegations," it must go beyond mere "labels and conclusions, and a formulaic recitation of

the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "[D]etermining whether

a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its

experience and common sense." *Iqbal*, 556 U.S. at 679. Under Rule 12(c), "the central issue is

whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief."

*Brittan Communications Intern. Corp. v. Sw. Bell Tel. Co.*, 313 F.3d 899, 904 (5th Cir. 2002)

(internal quotations omitted). When a complaint fails to do so, "this basic deficiency should be

exposed at the point of minimum expenditure of time and money by the parties and the court."

*Cuvillier v. Sullivan*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Twombly*, 550 U.S. at 558) (internal

quotations omitted).

## C.  Failure to State a Violation of a Constitutional Right

Plaintiff seeks relief in this case under 42 U.S.C. § 1983, which "creates a private right of

action for redressing the violation of federal law by those acting under color of state law." *Colson*

*v. Grohman,* 174 F.3d 498, 504 n.2 (5th Cir. 1999) (citing *Migra v. Warren City Sch. Dist. Bd. Of*

*Educ.,* 465 U.S. 75, 82 (1984)). "Rather than creating substantive rights, § 1983 simply provides a

remedy for the rights that it designates. Thus, an underlying constitutional or statutory violation is a predicate to liability under § 1983." *Harrington v. Harris,* 118 F.3d 359, 365 (5th Cir. 1987) (quoting *Johnson v. Harris Cnty, Flood Control Dist.,* 869 F.2d 1565, 1573 (5th Cir. 1989))(citations and internal marks omitted).

Defendant Richard Weihert raises the defense that he is entitled to qualified immunity from Plaintiff's claims of a constitutional violation. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "The qualified immunity inquiry thus involves two prongs that must be answered affirmatively for an official to face liability: (1) whether the defendant's conduct violated a constitutional right, and (2) whether the defendant's conduct was objectively unreasonable in light of clearly established law at the time of the violation." *Terry v. Hubert*, 609 F.3d 757, 761 (5th Cir. 2010) (citing *Pearson*, 555 U.S. at 232); *see also Tolan v. Cotton,* 134 S.Ct. 1861, 1865 (2014). The Court may begin its inquiry with either prong. *Tolan,* 134 S. Ct. at 1866 (citing *Pearson*, 555 U.S. at 236).

As noted, the first element of Plaintiff's claim for relief under 42 U.S.C. § 1983, the requirement that he state a violation of a constitutional right, is the first element in the qualified immunity defense. Plaintiff Aubrey's constitutional claim against Weihert is that he was denied medical care in violation of the Eighth Amendment. Deliberate indifference to the serious medical needs of an inmate violates the Eighth Amendment and states a cause of action under 42 U.S.C. § 1983. *See Estelle v. Gamble*, 429 U.S. 97, 105 (1976); *Jackson v. Cain*, 864 F.2d 1235, 1244 (5th

Cir. 1989). Deliberate indifference constitutes the "unnecessary and wanton infliction of pain." *Estelle*, 429 U.S at 104."Deliberate indifference is an extremely high standard to meet." *Domino v. Texas Dept. of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). "The deprivation alleged must be, objectively, 'sufficiently serious;' a prison official's act or omission must result in the denial of 'the minimal civilized measure of life's necessities.'" *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal citations omitted). To establish deliberate indifference, the plaintiff must show that the defendant was both (1) aware of facts from which he could infer a substantial risk of serious harm to the inmate's health, and (2) actually drew the inference there was an substantial risk of serious harm to inmate health. *Farmer*, 511 U.S. at 837; *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006). Moreover, "delay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference [that] *results in substantial harm." Easter*, 467 F.3d at 464 (internal quotations omitted).

Because deliberate indifference is a high standard, "[a]ctions and decisions by officials that are merely inept, erroneous, ineffective or negligent do not amount to deliberate indifference and thus do not divest the official of qualified immunity." *Doe v. Dallas Independent School District*, 153 F.3d 211, 219 (5th Cir. 1998). Therefore, it is not enough to allege that medical personnel have been negligent in diagnosing or treating a medical condition. *Estelle*, 429 U.S. at 105-106. Similarly, an inmate's mere disagreement with his medical treatment does not constitute deliberate indifference (absent exceptional circumstances). *Rogers v. Boatright*, 709 F.3d 403, 410 (5th Cir. 2013); *see also Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir.1997). "Rather, the plaintiff must show the officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs."

*Domino*, 239 F.3d at 756 (internal citations omitted); *see also Estelle*, 429 U.S. at 105-106.

Taking Aubrey's allegations as true, he fails to state a claim of deliberate indifference to his serious medical needs against Defendant Weihert. The only allegations Aubrey makes about Defendant Weihert are that on May 6, 2015, Weihert ordered "long overdue" x-rays of Aubrey's left knee and referred the x-rays to a doctor at the hospital. (Doc 26, at 4.) Then on May 11, 2015, Defendant Weihert relayed the doctor's findings and allegedly told Aubrey, "I guess you already know that you fractured your tibia." (Doc. 26, at 4.) Aubrey contends Defendant Weihert gave him a bottom bunk restriction and said to "return to activities as normal" despite Aubrey's claims of severe pain in his leg. (Doc. 26, at 4.) Aubrey later makes the claim that Defendant Weihert's actions of not "further evaluating Plaintiff's leg after findings of fracture" and after his complaints of chronic pain violated his Eighth Amendment rights under the Constitution. (Doc. 26, at 4.)

None of Aubrey's allegations, even if true, show that Defendant Weihert acted deliberately indifferently to Aubrey's serious medical needs in violation of his constitutional rights. *See Farmer*, 511 U.S. at 837. In fact, Aubrey's allegations show that Defendant Weihert medically examined Aubrey on at least two occasions and provided him medical treatment. He ordered x-rays for Aubrey, referred him to a doctor at a hospital, reviewed the x-rays with Aubrey, and gave him at least one medical restriction (i.e., 90-day bottom bunk pass). (Doc. 26, at 4.) He makes no specific complaints about the medical restrictions and does not allege that he suffered any physical injury as a result of the restrictions Weihert gave him. Even if he had a disagreement with medical restrictions, however, that is not sufficient to state a claim for deliberate indifference. *Newsom v. Khoshdel*, No. H-08-0707, 2009 WL 7829807, at *2 (S.D. Tex. Feb. 17, 2009) (holding that inmate did not show that medical defendants who removed some of his work restrictions upon examination of his chart acted

deliberately indifference because "[w]hile plaintiff may disagree with defendants' assessments of his condition and needs, it does not mean that a constitutional violation occurred"); *see also Rogers*, 709 F.3d at 410 (holding that an inmate's mere disagreement with his medical treatment does not constitute deliberate indifference).

Thus, far from acting deliberately indifferent, Weihert was attentive to Aubrey's medical needs and provided several instances of medical treatment to Aubrey, about which Aubrey makes no specific complaints. Aubrey's main complaint seems to be that Defendant Weihert did not provide him further treatment and did not further evaluate him even though he knew Aubrey's tibia was broken and that he allegedly had chronic pain. But "the decision regarding whether to provide additional treatment 'is a classic example of a matter for medical judgment.'" *Domino*, 239 F.3d at 756 (quoting *Estelle*, 429 U.S. at 107). Once again, Aubrey's allegations show Defendant Weihert did examine and treat Aubrey and used his medical judgment to prescribe a certain treatment plan. Allegations that this treatment was erroneous, ineffective, or negligent is still not sufficient to state a claim for deliberate indifference. *Doe*, 153 F.3d at 219 ("Actions and decisions by officials that are merely inept, erroneous, ineffective or negligent do not amount to deliberate indifference."). Aubrey never alleges that Defendant Weihert "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Domino*, 239 F.3d at 75. Thus, even taking his allegations against Defendant Weihert as true, Aubrey fails to state a claim of deliberate indifference to his serious medical needs against him. Thus, Plaintiff has failed to state a claim upon which relief may be granted as to his constitutional claim.

**D. Official Capacity Claim--Eleventh Amendment Immunity.**

8

To the extent Offender Aubrey is suing Defendant Weihert in his official capacity for monetary damages, Defendant Weihert is entitled to Eleventh Amendment immunity. The Eleventh Amendment bars suit in federal court against a state, or one of its agencies or departments, regardless of the nature of the relief requested. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984), *superseded by statute on other grounds*, 28 U.S.C. § 1367; *Neuwirth v. Louisiana State Bd. Of Dentistry*, 845 F.2d 553, 555 (5th Cir. 1988). A suit for damages against a state official in his official capacity is not a suit against that individual, but a suit against the state. *Hafer v. Melo*, 502 U.S. 21, 25 (1991). Consequently, a state official acting in his official capacity is not a "person" subject to suit under Section 1983. *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989). The State may waive Eleventh Amendment Immunity or Congress may specifically override the immunity under Section 5 of the Fourteenth Amendment. *Welch v. Texas Dept. of Highways and Public Transp.*, 483 U.S. 468, 473-74 (1987). Yet, neither Congress nor the State of Texas has waived Eleventh Amendment immunity with regard to Section 1983. *See Will*, 491 U.S. 58 at 66 ("Congress, in passing § 1983, had no intention to disturb the States' Eleventh Amendment immunity.").

Offender Aubrey's allegations concern matters occurring within the scope of Defendant Weihert's employment as an employee of TTUHSC, a state agency. Accordingly, to the extent that Offender Aubrey is suing Defendant Weihert for money damages in his official capacity, his claims are barred by the Eleventh Amendment.

### III. MOTION FOR SUMMARY JUDGMENT

As noted in the discussion of Defendant Weihert's motion, Plaintiff Aubrey asserts a claim under 42 U.S.C. §1983 alleging violations of the Eighth Amendment to the U.S. Constitution, as

well as state law claims, against the two other defendants in this lawsuit, Sherry Terry and Sandra Castillo. (Doc. 26, at 2.) Defendants Sherry Terry, RN and Sandra Castillo LVN have filed a combined motion for summary judgment, brief in support, and appendix. These Defendants filed an extensive appendix in support of their motion for summary judgment that includes the February 24, 2016 Affidavit of Beverly Cogburn, Records Custodian, TDCJ-Ware Unit, Hospital District Nursing Unit, along with 155 pages of medical records created on Kristopher Chad Aubrey (Doc. 101, at 2-157); the February 24, 2016 Affidavit of Sherry Terry, RN (Doc. 101, at 158-59); and the February 24, 2016 Affidavit of Sandra Castillo, LVN (Doc. 101, at 160-61.) In response to the summary judgment motion, Plaintiff provided a March 25, 2016, Declaration[2], along with a brief in support, and an unproven medical record. (Doc. 105, at 3-12.)

## A. Plaintiff's Summary Judgment Evidence

Plaintiff's amended complaint is not sworn to under penalty of perjury, thus it does not constitute summary judgment evidence. It does set forth the basis for Plaintiff Aubrey's claims against Defendants Terry and Castillo. Aubrey's specific allegations against Nurse Castillo and Nurse Terry are as follows: 1) He alleges that he saw Nurse Castillo for a visit on May 20, 2015 and she told him they don't have any pain pills stronger than Naproxen, she explained to him the amount of pain women experience giving birth, and she said "get him out of here, he can walk;" 2) He alleges that Nurse Terry and Nurse Castillo said he had suffered a fracture and left untreated properly may require surgery, and because he only has a short time left, TDCJ is not going to do it; 3) He

---

[2]*See generally Nissho-Iwai American Corp. v. Kline,* 845 F.2d 1300, 1306 (5th Cir. 1989) (noting that although an unsworn affidavit is incompetent to raise a fact issue precluding summary judgment, the statutory exception in 28 U.S.C. § 1746 permits unsworn declarations to substitute for an affidavit if made "under penalty of perjury" and verified as "true and correct.")

alleges that Nurse Terry and Nurse Castillo said to him "it's your fault, now you have to live with it." (Doc. 26, at. 5.) Aubrey's amended complaint makes no other specific allegations against Defendants Terry or Castillo.

As noted, Plaintiff also supplied a Declaration he signed pursuant to 28 U.S.C. § 1746. (Doc. 105, at 3-5.) Plaintiff contends in that document that a Sergeant told him that "if they won't treat you properly wait until they leave at 6 pm then act like you're having an allergic reaction and can't breathe and we will take you to the hospital to get treated." He also alleges the following:

> So if that's a substantial amount of medical treatment for this piece of bone knocked off my tibia and embedded in my tendon causing excruciating pain that at this point Tylenol 3 w/codeine does not even help and will definitely need surgery. So it seems that defendants are attempting to pull the wool over this Honorable Court's eyes with a lot of medical full that has nothing to do with this complaint. . . .

> On May 2, 2015 I was seen by a nurse other than Terry or Castillo and was referred to provider for xrays of left knew. This nurse was very surprised that no xrays had been ordered after numerous visits for the same chronic left leg pain. The CMC formulary guide book (Correctional Managed Care) an inmate has to put in a sick call. Then see a nurse and then doctor. ON the Ware Unit Nurse Sandra Castillo is known and called by inmates "the Guard Dog" in medical. This day however Plaintiff was seen by a different nurse and finally got xrays ordered. Plaintiff was being denied due medical process. [sic]

> After we learned my left leg had been fractured with bone debris above tibia Plaintiff returned to medical to ask for something stronger than T.D.C.J.'s miracle cure all Naproxen and was told by Nurse Castillo that they don't have anything stronger than Naproxen. Nor did she put me through to see provider.

> Then Plaintiff was giving the "It's your fault now you have to live with it," speech. And when Plaintiff pleaded for further treatment Plaintiff was told by nurses Castillo and Terry that he does not have enough T.D.C.J. time left (9 months) for proper medical care. (Time limit is no policy or law).

Aubrey Declaration (Doc. 105, at 4-5.) Plaintiff Aubery also supplied with his response a copy of a medical report of a March 9, 2016 visit Aubrey had with Jack Thomas, M.D.. (Doc. 105, at 12.)

**B. Defendants' Appendix Evidence**

Defendants Sherry Terry and Sandra Castillo are employees of the Mitchell County Hospital District, a local governmental entity that provided medical care to TDCJ inmates by contract. (Doc. 101, at 158, 160); *see also* Tex. Special Dist. Local Laws Code, Ch. 1062. Both Nurse Terry and Nurse Castillo were assigned by the Mitchell County Hospital District to work at the TDCJ Ware Unit during the time that Aubrey was incarcerated in the Unit. (Doc. 101, at 158, 160). The medical records in this case indicate that Aubrey was incarcerated in the Ware Unit from approximately October 6, 2014 until approximately June 3, 2015. (Doc. 101, at 3-5, 157). Neither Nurse Terry nor Nurse Castillo were specifically assigned to Aubrey and they did not see him every time he received some type of medical or nursing care. Instead, there were other health care professionals, including LVNs, RNs, Physician Assistants and physicians who also provided nursing care to Aubrey and the other inmates in the Ware Unit. (Doc, 101, at 158, 160). As nurses, Defendants Terry and Castillo can provide nursing care to patients but they are not allowed to practice medicine, which includes making a diagnosis, and ordering diagnostic tests or surgical procedures. (Doc. 101, at 158, 160-61.)

**C. Summary-Judgment Standard**

When the record establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," summary judgment is appropriate. Fed. R. Civ. P. 56(a). "[A dispute] is 'genuine' if it is real and substantial, as opposed to merely formal, pretended, or a sham." *Bazan v. Hidalgo Cnty.*, 246 F.3d 481, 489 (5th Cir. 2001) (citation omitted). A fact is "material" if it "might affect the outcome of the suit under governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

To demonstrate that a particular fact cannot be genuinely in dispute, a defendant movant must

(a) cite to particular parts of materials in the record (e.g., affidavits, depositions), or (b) show either that (1) the plaintiff cannot produce admissible evidence to support that particular fact, or (2) if the plaintiff has cited any materials in response, show that those materials do not establish the presence of a genuine dispute as to that fact. *See* Fed. R. Civ. P. 56(c)(1). Although the Court is **required** to consider only the cited materials, it **may** consider other materials in the record. *See* Fed. R. Civ. P. 56(c)(3). Nevertheless, Rule 56 "does not impose on the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 n.7 (5th Cir. 1992). Instead, parties should "identify specific evidence in the record, and . . . articulate the 'precise manner' in which that evidence support[s] their claim." *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994).

In evaluating whether summary judgment is appropriate, the Court "views the evidence in the light most favorable to the nonmovant, drawing all reasonable inferences in the nonmovant's favor." *Sanders-Burns v. City of Plano*, 594 F.3d 366, 380 (5th Cir. 2010) (citation omitted) (internal quotation marks omitted). "After the non-movant has been given the opportunity to raise a genuine factual [dispute], if no reasonable juror could find for the non-movant, summary judgment will be granted." *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

## D. Summary Judgment Analysis

### (I). Failure to Show Deliberate Indifference to a Serious Medical Need

Just as he did against Weihert, Plaintiff Aubrey alleges against Terry and Castillo that he was denied needed medical care in violation of his constitutional rights under the Eighth Amendment. The Court previously set forth the high standards for a Plaintiff to state a claim of deliberate indifference to a serious medical need.

(a.) Whether Aubrey suffered from a "serious medical need"

In this case, Defendants Terry and Castillo are entitled to summary judgment because Aubrey did not suffer from a serious medical need. Not every medical condition for which an inmate requests treatment is a "serious medical need." *Cf Monmouth County v. Lanzaro,* 834 F.2d 326, 347 (3d Cir.1987) ("Where [] delay [in medical care] results in an inmate's suffering a life-long handicap or permanent loss, the medical need is serious")(internal citations and quotations omitted). In this case, the summary judgment evidence shows that Aubrey did not, at the time he presented to these defendants, suffer from a serious medical need. Although Aubrey made numerous complaints regarding pain in his left leg, the medical evidence shows that, at worst, he had an old injury that did not result in significant impairment or complication and was not a serious medical need. For example, the medical records show that on March 11, 2015, Aubrey was examined by Nurse Castillo, who documented that Aubrey "reports old injury but denies any recent injuries" and that he could "ambulate ad lib w/ slow steady gate, able to stand/sit w/o difficulty." (Doc. 101, at 121-122). Aubrey was again examined on April 2, 2015 by Adelina Marquez, LVN, and though Plaintiff complained of knee pain from an "old injury to his left knee", and complained of pain in walking, the nurse observed: "ambulation normal" "no swelling noted to left knee, no deformity noted." (Doc. 101, at 127-128) Aubrey was then examined on May 5, 2015 by Physician Assistant Richard Weihert, whose findings included the following: "Left knee – no visible swelling or deformity, no effusion/edema/no redness or warmth–palpable grinding / popping with flexion/extension–negative baker's cyst. Patella mid line–non tender, negative drawer, Vargus/Valgus – stable." (Doc. 101, at 142-43.) Aubrey received x-rays on his left knee on May 6, 2015. The x-rays revealed "[n]o acute bony process is apparent", but did show a 7 mm "bony appearing density". (Doc. 101, at 147). On May 20, 2015, the medical record shows "no acute distress" and that he could "ambulate ad lib

w/slow steady gait, able to change positions (sit/stand)w/o difficulty . . . no swelling/deformity noted to left lower extremity". (Doc. 101, at 150.) So, although Aubrey had an old knee injury that caused him ongoing pain, the medical records in the case do not show that this was a "serious medical condition."

(b.) Whether Defendants Terry and Castillo were deliberately indifferent

Even assuming that Aubrey had a serious medical condition, the summary judgment evidence shows that Defendants Terry and Castillo were not deliberately indifferent to his medical needs. As noted previously, in order to establish a claim of deliberate indifference based on denial of medical care, an inmate must present evidence that officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Domino*, 239 F.3d at 756. "Delay in medical care can only constitute [a constitutional] violation if there has been deliberate indifference, *which results in substantial harm*." *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993)(emphasis added). "Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his/her medical treatment, absent exceptional circumstances. 'Furthermore, the decision whether to provide additional treatment is a classic example of a matter for medical judgment.'" *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (citation omitted)' *see also Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995)("a disagreement between an inmate and his physician concerning whether certain medical care was appropriate is actionable under §1983 only if there were exceptional circumstances") (citation omitted).

In this case the summary judgment evidence clearly shows that Terry and Castillo properly attended to Aubrey's medical needs. The evidence shows that Nurse Terry attended to Aubrey on

a number of occasions for various healthcare matters. On October 6, 2014, Nurse Terry participated in performing a Medical and Mental Health Transfer Screen on Mr. Aubrey. At that time, he was asked if he had a current health care complaint and his documented response was "No." (Doc. 101, at 4-6.) Nurse Terry also attended to and provided medication to Aubrey for complaints related to a rash on three separate occasions (10/9/14)(10/24/14)(10/30/14) and on the third occasion she referred him to the Physician Assistant, Richard Weihert, PA-C to address the problem. (Doc. 101, at 10-12, 32-34,38-40). Nurse Terry also saw Aubrey on November 7, 2014 for complaints of knee pain. Aubrey requested pain medication for his knee on this occasion and Terry provided him with the requested medication. (Doc. 101, at 52-54.) Similarly, Nurse Castillo attended to Aubrey on several occasions. Castillo attended to or treated Aubrey for complaints related to his rash a number of times (10/22/14)(10/30/14)(11/19/14)(3/11/15). (Doc. 101, at 30, 45, 69-71, 117-119 ). Castillo attended to Aubrey for complaints related to his knee pain on March 11, 2015 and gave him pain medication as he requested. (Doc. 101, at 121-123). She then saw him again for knee pain on May 20, 2015, after he had been seen by the Physician Assistant and had x-rays on his knee. Nurse Castillo reviewed Aubrey's medical chart before seeing him on this date and then performed another assessment on his knee, finding that he could sit and stand without difficulty, he had no swelling or deformity, and he had no acute distress. (Doc. 101, at 149-151). Aubrey asked Nurse Castillo for stronger pain medication at this appointment. She informed him that his current medication was the strongest pain medication she had to give him. Additionally, based on her assessment, she did not believe he needed any stronger pain medication. (Doc. 101, at 160-161). Thus, the summary judgment evidence shows that Defendants Terry and Castillo provided nursing care to Aubrey as appropriate and did not refuse to provide him care.

As stated above, Nurse Terry and Nurse Castillo were not the only healthcare professionals that attended to Aubrey and the summary judgment evidence shows that Aubrey received considerable medical attention from a number of health care professionals at the Ware Unit. For example, Aubrey was seen by other nurses related to his knee pain on April 2, 2015 and May 2, 2015, and on the May 2 visit, he was scheduled for an appointment with the Physician Assistant. (Doc. 101, at 127-129, 139-141). Aubrey was then seen by the Physician Assistant, Richard Weihert, PA-C on May 5, 2015 for his knee pain. Weihert examined Aubrey's knee and referred him for x-rays. (Doc. 101, at 142-43). As stated above, Aubrey received x-rays on his knee on May 6, 2015, which showed no acute fracture or dislocation. (Doc. 101, at 147.) Weihert then performed a follow up evaluation on Aubrey on May 11, 2015. (Doc. 101, at 147-148). Aubrey was "chained out" to the TDCJ Middleton Unit on June 3, 2015. (Doc. 101, at 157).

The summary judgment evidence shows that Defendants Terry and Castillo, as well as other healthcare providers at the Ware Unit, did not refuse to treat Aubrey or deny him medical care. Instead, Aubrey was seen on numerous occasions for various medical issues, including his claims of knee pain. A review of the Declaration and evidence submitted by Plaintiff does not change this determination. Plaintiff's statements that he should have been given stronger pain medication than Naproxen, and that Plaintiff was, assuming it was true, told he must "live with his pain" does not change the fact that medical records show that he was seen for his left knee pain on numerous instances in the limited time period made the basis of his claims against Defendants Castillo and Terry in the amended complaint. Further, the medical record supplied by Plaintiff in his response, dated in March 2016, is several months later than the time period made the basis of this case. (Doc. At 12.) Thus, the later-in-time substantive recommendation of Dr. Thomas shown in this document does not change the review of the medical care given to Aubrey while at the Ware Unit in the Spring

of 2015.

Although Aubrey may feel that more should have done to address his knee pain, the mere fact that he disagrees with the medical findings and treatment does not show that Defendants Castillo and Terry showed deliberate indifference to him. *See Banuelos v. McFarland*, 41 F.3d at 235. Even assuming that the medical findings and treatment of him were wrong, this might constitute medical negligence but is not sufficient to show a constitutional violation. *See Gobert v. Caldwell*, 463 F.3d at 346. Thus, the summary judgment shows that Defendants Terry and Castillo were not deliberately indifferent to any serious medical need of Aubrey and they did not violate his constitutional rights under the Eighth Amendment.

### (II.) Whether Defendants Terry and Castillo are entitled to Qualified Immunity

In addition to arguing that the summary judgment evidence shows that Plaintiff has failed to show that Defendants' conduct violated a constitutional right, Plaintiff Aubrey Defendants Terry and Castillo are also entitled to summary judgment based on qualified immunity. As shown by the summary judgment evidence addressed above, Aubrey cannot overcome the first element of qualified immunity, namely establishing a constitutional violation, because he cannot show that Defendants Terry and Castillo acted with "deliberate indifference" toward a serious medical need. Further, the summary judgment evidence, as detailed above, does not show that Nurse Terry or Nurse Castillo's actions were objectively unreasonable in light of clearly established law. Thus, Defendants Terry and Castillo are entitled to qualified immunity.

### IV. CLAIMS RESOLVED AS TO ALL DEFENDANTS

### A. Injunctive Relief Claims are Moot

Plaintiff Aubrey requests an injunction ordering all three of the defendants to immediately arrange for him to be seen by an orthopedic doctor, to receive "sound evaluation" of his left leg," to

stop forcing Aubrey to work, and to provide treatment "without delay." (Doc. 26 at 10-11.) As noted above, Aubrey was released from TDCJ custody. (Doc. 92)   Thus, his request for the injunctive relief is now moot, and should be dismissed. *See generally Granville v. Thaler,* No. H-07-0849, 2012 WL 3779228, at *2 (S.D. Tex. Aug. 30, 2012) ("Because plaintiff is no longer in custody, and nothing in the record raises an issue of continuing harm or a real and immediate threat of repeated injury, his requests for injunctive relief regarding prison policies and practices have become moot") (citing *Beck v. Lynaugh,* 842 F.2d 759, 762 (5th Cir.1988)). The district court in *Granville* dismissed plaintiff's claims for injunctive relief as moot. *Id.* Plaintiff Aubrey is no longer in TDCJ custody and thus is no longer under the care or treatment of Defendants Weihert, Terry, and Castillo, and they will not be in a position to provide Plaintiff additional medical care.  Therefore, Aubrey's requests for injunctive relief in the form of compelling Defendants to provide him with certain medical treatment and medical restrictions, is moot and should be dismissed.

## B. Supplemental Jurisdiction as to State Law Claims

In addition to the assertion of federal constitutional claims, Plaintiff Aubrey's amended complaint also states that he is asserting state law tort claims of "negligence and medical malpractice." (Doc. 26, at 2.) Title 28 U.S.C. § 1367 provides that a district court may decline to exercise supplemental jurisdiction over state claims if, among other reasons, the "district court has dismissed all claims over which it had jurisdiction." *See* 28 U.S.C.A. § 1367(c)(3)(West 2006). Because Aubrey has failed to state any viable federal claims against Defendants, the Court should decline to exercise supplemental jurisdiction over the remaining state claims. *See* 28 U.S.C. §1367(c)(3); *see Coghlan v. Wellcraft Marine Corp.*, 240 F.3d 449, 455 (5th Cir. 2001) (district court may decline to exercise supplemental jurisdiction when claims giving rise to federal jurisdiction have been dismissed); *see also Daniels v. Thaler,* C.A. No. C-09-299, 2009 WL

5216880, at * 6 (S.D. Tex. Dec. 30, 2009) (declining to exercise supplemental jurisdiction over negligence claims after court had dismissed prisoner's constitutional claims brought under 42 U.S.C. § 1983). The Court should exercise its discretion under § 1367(c)(3) and dismiss the remaining state law claims without prejudice.

## V. RECOMMENDATION

For the foregoing reasons, it is **RECOMMENDED** that Richard Weihert's motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) (doc. 106), and the motion for summary judgment of Defendants Sherry Terry and Sandra Castillo (doc. 99), each should be **GRANTED**; such that all Plaintiff's claims, except his state law claims, should be **DISMISSED** with prejudice, and Plaintiff's state law claims should be **DISMISSED** without prejudice.

A copy of this Findings, Conclusions and Recommendation shall be served on all parties in the manner provided by law.

Any party may object to this Findings, Conclusions and Recommendation. A party who objects to any part of this Findings, Conclusions and Recommendation must file specific written objections within fourteen (14) days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and identify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. The failure to file specific written objections will bar the aggrieved party from attacking on appeal the factual findings, legal conclusions, and recommendation set forth by the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en

banc), *superceded by statute on other grounds,* 28 U.S.C. § 631(b)(1) (extending the time to file

objections from ten to fourteen days), *as recognized in ACS Recovery Servs., Inc. V. Griffin,* 676

F.3d 512, 521 n. 5 (5th Cir. 2012).

**SO ORDERED**.

Dated July  *28* , 2016.

E. SCOTT FROST
UNITED STATES MAGISTRATE JUDGE

21